# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRENTAIR BINGHAM,** | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 20-CV-3516** |
| | : | |
| **CITY OF READING, PA,** *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                                 **FEBRUARY 4, 2021**

Plaintiff Trentair Bingham appears to have abandoned this case shortly after filing it. Accordingly, for the following reasons, the Court will dismiss this case for failure to prosecute.

## I.    PROCEDURAL HISTORY

Bingham initiated this civil action by filing a Complaint dated April 3, 2020. (ECF No. 1.) At the time, he was incarcerated at Mecklenberg County Jail in Charlotte, North Carolina. Due to delays resulting from the pandemic caused by the novel coronavirus, Bingham's Complaint was not docketed until July 17, 2020. On July 21, 2020, the Court sent Bingham a "Notice of Guidelines for Representing Yourself (Appearing 'Pro Se') in Federal Court," which informed Bingham, among other things, that he was obligated to keep his address current with the Court by filing a notice of change of address with the Clerk of Court within fourteen days of an address change. (ECF No. 3 at 1-2 (citing Local Rule 5.1(b)).) Bingham filed his Complaint without paying the applicable filing fee or requesting leave to proceed *in forma pauperis*. As a result, on July 24, 2020, the Court issued an order requiring that Bingham pay the applicable filing and administrative fees, or move to proceed in forma pauperis, if he intended to proceed with his action. (ECF No. 4.) The Order was mailed to Bingham on July 27, 2020 at the address

for the Mecklenberg County Jail. On September 10, 2020, the United States Postal Service returned the Notice of Guidelines to the Court with the notation "Return to Sender - Refused - Unable to Forward - Released." (ECF No. 5.)

In light of Bingham's release,[1] in a September 18, 2020 Order, the Court directed Bingham to show cause within thirty days why the case should not be dismissed for failure to prosecute. (ECF No. 6.) The Court recognized Bingham would not receive the Order at his old address, but explained that "if Bingham intend[ed] to prosecute his case and contact[ed] the Clerk's Office about the status of his case, he [would] become aware of the Court's orders and [would] then be able to respond and provide a current address." (*Id.* at 1 n.1.) On October 22, 2020, the Postal Service returned the mail to the Court, and Bingham has not responded to the Order even though the time for doing so has expired.

## II. DISCUSSION

Since the Court has no ability to contact Bingham to determine whether he intends to proceed with this case, the Court will consider whether it is appropriate to dismiss this case for failure to prosecute.[2] Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action

---

[1] Courts have held that release from prison does not relieve a prisoner of the obligation to pay an initial partial filing fee in accordance with the Prison Litigation Reform Act. *See Drayer v. Att'y Gen. of Del.*, 81 F. App'x 429, 431 (3d Cir. 2003) (per curiam) ("We agree with the District Court's reasoning that once [plaintiff's] fee obligations under the PLRA accrued, his subsequent release from prison did not relieve him of his obligation under the PLRA to pay the initial fee . . . ."); *In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997) ("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."); *see also Stewart v. Wackenhut Corr. Corp.*, Civ. A. No. 01-731, 2006 WL 1623268, at *1 (E.D. Pa. June 8, 2006). That initial partial filing fee is calculated based on the financial information in the plaintiff's prison account statement. So, Harris would still be obligated to submit his prison account statement in accordance with § 1915(a)(2), despite his release.

[2] Bingham's Complaint raises claims, pursuant to 42 U.S.C. § 1983, against the City of Reading and Jasmine Sanchez. (ECF No. 1.) According to Bingham's Complaint, Defendant Sanchez removed Bingham's and Sanchez's biological daughter Katrina from Florida without Bingham's permission, and brought her to Reading, where, in August 2016, adoption

for "failure of the plaintiff to prosecute or comply with these rules or order of court." *See* Fed. R. Civ. P. 41(b). Ordinarily, a court determining whether to *sua sponte* dismiss a case because of a plaintiff's failure to prosecute must consider several factors in reaching its decision, as set forth in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) (the "*Poulis* factors"). *See, e.g.*, *Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994). However, an analysis under *Poulis* is not required when a plaintiff willfully abandons the case or makes adjudication impossible. *See Dickens v. Danberg*, 700 F. App'x 116, 118 (3d Cir. 2017) (per curiam) ("Where a plaintiff's conduct clearly indicates that he willfully intends to abandon the case, or where the plaintiff's behavior is so contumacious as to make adjudication of the case impossible, a balancing of the *Poulis* factors is not necessary."); *Baker v. Accounts Receivables Mgmt., Inc.*, 292 F.R.D. 171, 175 (D.N.J. 2013) ("[T]he Court need not engage in an analysis of the six *Poulis* factors in cases where a party willfully abandons her case or otherwise makes adjudication of the matter impossible." (citing cases)).

Some courts have reasonably concluded that when a plaintiff has failed to keep his address current with the Court and therefore cannot receive and respond to court orders, his conduct renders adjudication impossible, such that an analysis of the *Poulis* factors is not required. For example, in *McLaren v. New Jersey Dep't of Educ.*, the district court issued an order granting the *pro se* plaintiff leave to proceed *in forma pauperis*, but that order was returned by the Postal Service as undeliverable despite having been sent to the address the plaintiff provided. 462 F. App'x 148, 148 (3d Cir. 2012) (per curiam). A notification that the complaint had been received was likewise returned. *Id.* Approximately five months after issuing its initial

---

proceedings were conducted in Bingham's absence and without his consent. (*Id.* at 1-2.) Bingham requests compensatory and punitive damages, and to "re-start" the litigation concerning the adoption of his daughter. (*Id.*)

order, the district court "entered a notice of call for dismissal" pursuant to a local rule providing for dismissal of a case after 120 days of inactivity; the notice was also returned as undeliverable. *Id.* at 148-49.  The district court subsequently dismissed the case without prejudice and the plaintiff appealed.  *Id.* at 149.

The United States Court of Appeals for the Third Circuit concluded that the district court appropriately dismissed the case without balancing the *Poulis* factors because the plaintiff's failure to provide an up-to-date mailing address and the consequent return of court orders as undeliverable left the district court with "little choice as to how to proceed."  *Id.* at 149.  In affirming the dismissal, the Third Circuit observed that,

> although courts are normally required to consider whether a lesser sanction would be appropriate, "[t]he district court could not contact [the plaintiff] to threaten [her] with some lesser sanction.  An order to show cause why dismissal was not warranted or an order imposing sanctions would only find itself taking a round trip tour through the United States mail."

*Id.* (quoting *Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1998)) (alterations in original). *McLaren* has been interpreted as permitting dismissal without considering the *Poulis* factors when a plaintiff cannot be contacted because he failed to keep his address current with the court. *See Crews v. Resnick*, Civ. A. No. 16-978, 2017 WL 1232182, at *1 (E.D. Pa. Apr. 4, 2017) ("[T]he plaintiff's failure to notify the court of his change of address would, in itself, warrant dismissal of this action without prejudice without considering the factors set forth in [*Poulis*]."); *Welch v. City of Philadelphia*, Civ. A. No. 11-4670, 2012 WL 1946831, at *3 (E.D. Pa. May 30, 2012) (concluding that analysis of *Poulis* factors was not required where "it appear[ed] that [plaintiff] left prison months ago and ha[d] not provided this Court or the Defendants with his current address"); *see also Brewington v. Tritt*, Civ. A. No. 15-1362, 2016 WL 1658332, at *2 (M.D. Pa. Apr. 5, 2016) (observing that the decision in *Welch*, interpreting *McClaren,* "aptly noted the conundrum faced by courts dealing with vanished litigants in the Rule 41(b) context;

specifically, that the *Poulis* balancing test works best when a court can hear from both sides and then determine the extent of the party's personal responsibility and whether the party acted in bad faith, a task made difficult when Plaintiff has neither furnished an up-to-date address nor responded to his opponents' allegations regarding his failure to prosecute." (internal quotations and alterations omitted)), *report and recommendation adopted*, 2016 WL 1640008 (M.D. Pa. Apr. 26, 2016).  Most courts have nevertheless addressed the *Poulis* factors in an abundance of caution, so the Court will take the same approach here.

*Poulis* sets forth six factors to consider when determining whether to dismiss an action due to a plaintiff's failure to prosecute:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary . . . ; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d at 868 (emphasis omitted).  Not all of the *Poulis* factors must be satisfied in order for a court to dismiss a complaint.  *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003); *Shahin v. Delaware*, 345 F. App'x 815, 817 (3d Cir. 2009) (per curiam).

As to the first *Poulis* factor, the extent of the party's personal responsibility, it is Bingham's sole responsibility to prosecute his case and comply with Court orders.  *See Briscoe v. Klaus*, 538 F.3d 252, 258-59 (3d Cir. 2008) (explaining that "a pro se plaintiff is personally responsible for complying with the court's orders" and "it is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (where litigant was proceeding pro se, any failure to comply with orders was attributable to him).  As a pro se litigant, Bingham is likewise responsible for keeping his address current with the Court. *See Carey*, 856 F.2d at 1441 (observing that "[a] party, not the district court, bears the burden of

keeping the court apprised of any changes in his mailing address"); *Stephen v. United States Attorney Gen.*, Civ. A. No. 18-CV-0615, 2020 WL 832914, at *3 (M.D. Pa. Jan. 10, 2020) ("With regard to the first *Poulis* factor, the responsibility to keep the Court informed of his current address was solely Plaintiff's."), *report and recommendation adopted,* 2020 WL 820192 (M.D. Pa. Feb. 19, 2020).  Although Bingham did not receive the Notice of Guidelines, it is still his responsibility to keep his address current in accordance with Local Rule 5.1(b).  Accordingly, this factor weighs in favor of dismissal.

The second factor, prejudice to the defendants, weighs in favor of dismissal.  "Examples of prejudice include 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'"  *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (quoting *Scarborough v. Eubanks*, 747 F.2d 871 (3d Cir. 1984).  "[W]hile 'prejudice' for the purpose of *Poulis* analysis does not mean 'irremediable harm,' the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial."  *Ware,* 322 F.3d at 222.  It is unclear how this case could proceed without plaintiff's participation.  "Simply put, there is no way for Defendants to defend against Plaintiff's claims in his absence."  *Stephen*, 2020 WL 832914, at *3.  Accordingly, requiring any putative defendants to proceed in this context would be prejudicial.

The third factor, a history of dilatoriness, is neutral here.  This factor must be assessed over the lifetime of the case, keeping in mind that "conduct that occurs one or two times is insufficient."  *Briscoe*, 538 F.3d at 261.  In the instant case, although much of the delay is attributable to the pandemic caused by the novel coronavirus, Bingham has not provided the Court with an up-to-date address or contacted the Court to determine the status of his case.

While Bingham has not shown a history of dilatoriness here, his failure to update his address or inquire as to the status of his case suggests an intention to abandon this case.

The fourth factor, whether plaintiff's conduct was willful or in bad faith, is neutral because the Court cannot say whether Bingham's "failure to update his address was 'willful' or 'in bad faith' because, given his unknown whereabouts, we cannot ask him." *Welch*, 2012 WL 1946831, at *3; *see also El-Hewie v. Paterson Pub. Sch. Dist.*, Civ. A. No. 13-5820, 2015 WL 5306255, at *4 (D.N.J. Sept. 10, 2015) (where a litigant "has been silent, and that silence is ambiguous" the court could not conclude that litigant acted willfully or in bad faith for purposes of the fourth *Poulis* factor). On this record, Bingham's failures are more consistent with negligence or inadvertence as opposed to bad faith.

An examination of the fifth factor, the effectiveness of sanctions other than dismissal, reveals that no other sanction would be effective because Bingham is proceeding *pro se*, is likely unable to pay monetary sanctions given his request to proceed *in forma pauperis*, and because the Court has no way of imposing those sanctions without the ability to contact Bingham. *See Adonai-Adoni v. King*, 506 F. App'x 116, 119 (3d Cir. 2012) (per curiam) ("Because Adonai–Adoni proceeded pro se and in forma pauperis, monetary sanctions were not a viable form of alternative sanction."); *see also McLaren*, 462 F. App'x at 149 ("[A]lthough courts are normally required to consider whether a lesser sanction would be appropriate, the district court could not contact the plaintiff to threaten her with some lesser sanction." (internal citations and alterations omitted)); *Lear v. Dahaus*, Civ. A. No. 03-1156, 2006 WL 1508667, at *3 (W.D. Pa. May 31, 2006) ("The fifth *Poulis* factor weighs in favor of dismissal for failure to prosecute, given that Plaintiff cannot be contacted, it is difficult to see how any lesser sanction, of which Plaintiff cannot be made aware, would serve the interests of justice or judicial economy.").

Lastly, regarding the sixth factor, a claim is considered meritorious when the allegations of the complaint, if established at trial, would support recovery. *See Poulis*, 747 F.2d at 869-70. In his Complaint, Bingham generally asserts claims against his daughter's mother and the Reading Family Court based on adoption proceedings that were undertaken in Bingham's absence and without his permission, and that allegedly decided the custody of his biological daughter. (ECF No. 1.)

Bingham's claim suffers from a host of deficiencies. First, though he names the City of Reading as a Defendant, it is clearly the conduct of the Common Pleas Court located in Reading at issue in his Complaint. However, that court, as part of Pennsylvania's unified judicial system, shares the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). As there is no indication Pennsylvania has waived its Eleventh Amendment immunity, Bingham's claim against the Reading court is barred by the Eleventh Amendment. To the extent his claim could be understood to assert a due process claim based on the Court's adjudication of his daughter's custody, the Eleventh Amendment precludes that claim as well. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989) (states are entitled to Eleventh Amendment immunity from claims under 42 U.S.C. § 1983 and are not "persons" for purposes of that provision). Second, the other named Defendant, Jasmine Sanchez, is not amenable to suit under § 1983 because there is no allegation that she was acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.")

Additionally, it has been well established for over 150 years that federal courts lack jurisdiction to hear cases concerning divorce, alimony, or child custody cases. *Ankenbrandt v.*

*Richards*, 504 U.S. 689, 703 (1992) (concluding "that the domestic relations exception, as articulated by this Court since *Barber* [*v. Barber*, 62 U.S. 582 (1858)], divests the federal courts of power to issue divorce, alimony, and child custody decrees."); *see also Barber*, 62 U.S. at 584 (stating "[w]e disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony"); *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890) ("[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."). Bingham's claim appears to challenge state court proceedings that have decided the custody of his daughter Katrina. "As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 704.

Further, the *Rooker-Feldman* doctrine bars federal district courts from reviewing final decisions of a state court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine is jurisdictional, precluding a loser in state court from challenging a judgement entered in state court, "based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). That is precisely the relief Bingham seeks in this case, namely, to overturn a state court custody decision.

Although for the reasons stated it does not appear that Bingham's claims are plausible, at this early stage of the litigation, based solely on the Complaint, the Court is reluctant to state that Bingham could not state a plausible claim. However, if Bingham cannot be reached by the Court or the defendants once they are joined, it not possible to move this litigation forward. *See Welch*, 2012 WL 1946831, at *4 ("[W]hen neither the Court nor opposing counsel can reach the plaintiff

9

because he has not furnished an up-to-date address (as is the case here), and when plaintiff has not responded to his opponents' allegations regarding his failure-to-prosecute (also the case here), we have no choice but to act on the information before us; Plaintiff has, in essence, made adjudication of the case impossible."). A plaintiff must pursue his claims, rather than abandon them, if he is to recover. Bingham's conduct is simply "incompatible with maintaining a lawsuit." *Stephen*, 2020 WL 832914, at *4; *Smith v. Atlas Fitness Incorporation Sys.*, Civ. A No. 10-1021, 2011 WL 3608601, at *3 (M.D. Pa. July 20, 2011) ("Since no party is actively litigating this case at present it is impossible to assess what merit, if any, there may be to these claims."), *report and recommendation adopted*, 2011 WL 3608594 (M.D. Pa. Aug. 16, 2011).

In sum, upon balancing the *Poulis* factors, the Court finds that they weigh in favor of dismissing this action pursuant to Federal Rule of Civil Procedure 41(b) for Bingham's failure to prosecute. Simply put, there is no way for this litigation to progress without Bingham's participation. An Order follows, which dismisses this case.

**BY THE COURT:**

**/s/ Chad F. Keney**

**CHAD F. KENNEY, J.**